Good morning, may it please the court. Since 2016, Rolando Villarreal has challenged the enhancement of his sentence under the Armed Career Criminal Act based on his Texas convictions for aggravated assault and burglary. There have been many issues briefed over the years, but there are two points of agreement that I'd like to highlight first. First, under Borden and under this court's application of Borden and Gomez-Gomez, the parties agree in their briefing that Mr. Villarreal's aggravated assault convictions do not qualify as ACCA enhancements by reason of the elements clause. We know the sentence now is illegal. The question is whether he should receive relief. The second point of agreement, the government has affirmatively waived the statute of limitations in its briefing if Mr. Villarreal prevails on the issue before this court. The statute of limitations was the issue that has separated us for all of these years, and the government now has affirmatively waived it based on this court's resolution of the following issue. The issue now is, in this first-time 2255 motion, did Villarreal state what can properly be considered a claim that would entitle him to relief under the Supreme Court decision in Borden? And so the basic question before the court is— How do we know that he's raising a Borden claim and not a Johnson claim? Yes, Your Honor. And we know that by the way that he raised the two separate claims. And so if we go to his first amended petition, it was an amendment made as of right while he was still pro se before the government ever responded. And in that amendment to his petition, he asserted both a Johnson-based residual clause claim, and then in five pages of briefing, he asserted a claim that his Texas going through all of this court's case law at the time that was applicable, distinguishing causation of bodily harm. What should this court do? What do you ask us to do for relief? We're asking the court to vacate the order of dismissal. This case had originally been dismissed by the district court under the statute of limitations, which has now been affirmatively waived. And if the court does that, it should remand to the district court for entry of a new judgment, limiting the sentence to 120 months. But first, I have to show you that there is actually a claim. And I agree that there are two claims that were made. There was definitely a Johnson residual clause claim made. That was absolutely necessary at the time to trigger a new statute of limitations to give the Ariela right to file a 2255 motion. But he had to have a parallel claim at the same time under the elements clause. Otherwise, he could not prevail on the merits. And that's what the magistrate actually said. He could not prevail on the merits because aggravated assault met the elements clause. So he made both claims. He set up both arguments and he had to do it in order to prevail to get relief at the end. The government takes a different view, of course. The government takes the view that the claim had to be very specific in order to get relief. Now, the government's essentially saying we had to argue that Texas aggravated assault didn't meet the elements clause because of the recklessness mens rea, that that whole thing had to be a claim and that we didn't make it until it was too late. But that draws the definition of a claim far too narrowly. What we set out in our briefing is the case law from other circuits, primarily the case law that this circuit has cited repeatedly and favorably in defining what constitutes a claim for the re-litigation bar under 2244 and 2255. And you said that raised for the first time when you, as you framed at the very beginning, when you were framing your contend that it was raised in the supplemental memorandum that was submitted. Yes, Your Honor. When I say for the first time, I'm really referring to this because it's an initial 2255 petition. We've had quite a bit of controversy in the briefing about whether any of the rules for second successive petitions should ever apply. This is not that petition. This is what you're saying is the first time you're not saying that it wasn't raised before much earlier in the proceeding. Yes, Your Honor. Before the government had ever responded. Right. As a matter of fact. So you're saying that supplement is when it was raised. Yes, Your Honor. That's the first time it was raised. Is Branigan inconsistent with Fifth Circuit case law and Russell and Lucio? No, Your Honor. Branigan is a case that this circuit has repeatedly cited. It's cited in Ray Sharp. It's cited most recently in Crawford versus Kane. Of course, that opinion was withdrawn and now that case is before the court on Bach. But the court has gone back to Branigan on numerous occasions to go to the same essential principle. A claim is defined by the facts that give rise to the controversy. The common core of facts like the Supreme Court would have said in mail or did say in mail versus Felix, not by the legal arguments that are advanced to support the claim for relief. And so most recently, the second successive petition, because it's already been litigated, the petitioner was saying, I have a Maya claim. And this court said, no, there is not a Maya claim. There's not a Johnson claim. There's not a famous claim. There's one claim that's focused on the residual clause and void for vagueness. In other words, there's one claim focused on that step, as Branigan would have said in the proceeding. So this court has done the same thing that we did with the concurrence of facts. The concurrence of facts that we have here is the decision by the district court to apply the ACCA enhancement, at least in part based on that element's clause applied to the aggravated assault convictions. I'm not going as far as we have discussed in the briefing, the Branigan case, because of the way it divides up issues, we could say that all of the ACCA enhancement itself is one claim. And so any argument asserted with respect to that is our claim. But I'm not going that far. I don't need to go that far. I don't ask the court to go that far. I agree that Vargas Soto sets the framework. We had a Johnson residual clause claim, and we had it and has as an elements claim. If we had that claim under Branigan, under Ingray-Sharpe, under the other case law cited in the brief, all the legal arguments that we asserted then are brought into that The government doesn't dispute that we made the argument about recklessness in Ingray. The government's essentially saying we made it too late, that we made it for the first time in an objection to a report and recommendation. But there are two problems with the government's argument. First of all, it misunderstands the role of the report and recommendation and the objections. And that's why I cited to the Fourth Circuit cases of Ingray-George and report and recommendation, followed by objection with new arguments made. And Ingray-George, the Fourth Circuit said, what one must focus on is We've already remanded once in this case, and we discovered a COA difficulty. That's been cured. Why shouldn't we just go back to that point? We can, Your Honor. And that would be exactly what I'm arguing for, except the government is saying that we waived the recklessness argument, that we considered part of the initial claim. And what I'm trying to draw out for the court now is that it really was just an argument, not the claim itself. We'd already made the claim. And so we get to make the new arguments in the response to the report and recommendation. Perhaps more importantly, if I could draw the other two distinctions is the government cites to several cases from this circuit, including Rayford and Armstrong, where the court seemed not to say, the court did say, the district court was right not to take into account objections made for the first time in a report and recommendation. Why should we be informed by the reality of this situation? We have a litigant that's coming through the process while the law is churning, and it's either forfeited or it shouldn't be obtained. Why shouldn't we give them the benefit or the opportunity? Now we have something settled about the rules of the game, to state his claim or not, and then rule on it up or down. Why isn't that the proper way to go? That's exactly what we're asking for. I believe, if I've understood the question properly, that's exactly what we're asking for. We've made the claim. We were right all along. D'Ariel was right all along. He should now be entitled to relief. And there shouldn't be this sort of focus on what's a claim and what's an argument. But that's what the government is arguing to say, that you should deny us relief. Just assuming, Argumendo, that there's some ambiguity about whether the claim has been made, you would say that you should be able to go back now and make the claim, just following the gist of the previous question? Yes, Your Honor. If absolutely necessary. So there's two options here, in your perspective. I mean, there's three options, really, because they say, stop, we're done. Go back and we remand for the entry of judgment, consistent because the statute of limitations doesn't apply, or remand to allow the claim to be made properly and start at the beginning again. We could do that. That is an alternative that I had suggested, because we've been making this claim, and that's exactly what I asked the court to do after Borden first came out. Within a week or two of that decision coming out, the government opposed because we didn't have a COA, and so we've been back and forth for just that point. What's your best case that it's just an argument, not the claim itself? What is your best crystallization of that under Fifth Circuit precedent? Under Fifth Circuit precedent, it would be In re Sharpe. That would be the closest. If I could rely on Crawford v. Cain, I would go to that opinion, but it's been withdrawn now that that case is en banc. In re Sharpe is the published opinion. It was focused in on the step of the proceeding that the defendant or petitioner had already litigated, namely non-unanimous jury verdicts. The petitioner then wanted to come back because there was a new Supreme Court case, very similar to this position where Borden has now just come out, and the court said, you can't do that because you've already made the claim about non-unanimous jury verdicts years before. What I'm saying now is we've made the claim about the Elements Clause years before. We don't need a new claim. We've already got it. Borden is just the argument bringing us back into that same old claim. And unlike Sharpe, we've never stopped. We're still on the appellate process. We haven't had an ending, an adjudication that's been final, and that's why we're entitled to go back now. The one thing, if I might focus in again on these arguments about the objections to the report and recommendation, because that really does seem to be a fundamental part of the government's argument, is that we're in a totally different procedure here than what happened in Rayford and Armstrong. In those two cases, there was one report and recommendation. The district court then considered it, and the district court said, and this court approved, that the district court didn't have to take into account new arguments made in the objection. But that's not what happened here. In this case, Villareal made an objection to a report and recommendation. If this court looks at tab two in the record excerpts, there was a second report and recommendation. And on the very first page of it, the magistrate judge says, what happened? The district court ordered that first report and recommendation back for reconsideration. The magistrate judge went through all the documents that he was considering in amending his report and recommendation, which included our objections. And then there was a completely new report and recommendation issued. That report and recommendation took into account all of our arguments. It was the operative document, so it's a very distinct position than what had occurred in these prior cases. We had, before the magistrate judge, all of these arguments. At the time, the magistrate judge issued the operative report and recommendation that the district court actually relied on and actually adopted to deny relief. So very different procedural posture. The second difference between the cases that the government cites is that if you look at Rayford and Armstrong, using Villareal's definition of a claim focusing on the common facts that give rise to the controversy, Rayford and Armstrong really did assert new claims. They asserted new facts. Rayford is most clear. Rayford wanted to put in new evidence, new documents for the court to consider. And then Armstrong, the plaintiff or the petitioner, wanted to move from insufficiency of the evidence and a defect in the indictment to PSR-related issues and ineffective assistance of counsel. So clearly, new facts and a new step in the proceeding. And at that point, we have a completely new set of claims. That's not what happened here. From the very beginning of his pro se amended petition, Villareal had been arguing Texas aggravated assault doesn't have as an element the use of force. He had asserted a number of legal theories throughout the briefing. The magistrate judge had taken into account all of those theories. The government had responded to all of those theories before the district court ever adopted the magistrate judge's report. And so for that reason, we've made the claim. That claim brings in all of the arguments, whether it's Borden-based arguments, whether it's Johnson-based arguments, whether it's other arguments like Curtis Johnson that we made about the degree of force used in aggravated assault. Since we made the claim, this court so finds, the government agrees that Villareal is entitled to relief under the law as it stands now as declared by the Supreme Court in Borden. And as we know, even from this court's decisions, like Santillan and like Kelly cited in the briefs, when the Supreme Court interprets a statute, that statute sets the meaning, not just now, but what it was before and what it should have always been, citing to Rivers v. Roadway Express. So at this point, the government agrees, if this court finds that we've made the right claim, that we should go back and the Senate should be limited to 120 months. Mr. Villareal is going to be released to a halfway house this month. He's going to be fully released from the Bureau of Prisons Custody in July. And then he's serving two more years of supervised release after that. So there's still some period of custody. And then there's a period of supervised release that is going to follow. You saved time for rebuttal. Thank you, Mr. Herman. Mr. Smith? The question is, when does it ever end? Good morning, Your Honors. Jason Smith with the United States and may it please the Court. I agree that is, in part, the question here. From our perspective, the first issue on which the COA was issued here is dispositive of this case. Did Villareal assert a claim under the elements clause that his ACCA sentence was improperly imposed based on an offense that could be committed recklessly? And he did not assert that in his petition. Mr. Herman was just talking about the first amended petition, which falls at pages 450 through 462 of the ROA. The mens rea of the Texas aggravated assault statute is not mentioned anywhere in that filing. There are arguments in there about the aggravated assault statute not constituting a felony because of the distinction between causing injury and using force. But the mens rea, whether you refer to it as an issue or an argument or a claim— Well, it matters, whether you call it a claim or an argument under our case law. Whether it's a claim that has to be raised or just one of an argument that you could have other arguments on claims, does it matter? So I don't think it's just a semantic difference, is it? I think that the distinction upon which Mr. Herman is trying to rely here and trying to impose in this context does make it semantic here. When you are looking at it on the back end, when someone is trying to file a second or successive petition, then it really does matter. Someone has foreclosed from raising an argument in a second or successive petition that they should have raised to support a claim in the first petition. But the context here is different. By enacting 2255 and the AEDPA, Congress has sought to very narrowly limit the grounds on which a collateral attack can be brought and to channel collateral attacks into an initial filing. That is done through the limits on the types of claims that are cognizable. It is done on the kinds of—the limits on claims that can render something timely. It is done by the procedural default doctrine. And the farther that one moves along from an appeal to an initial 2255 to an appeal from an initial 2255 to a successive petition, the entire statutory scheme works to narrow and limit what can be raised. None of the case law that Mr. Herman relies on for that distinction between a claim and an argument arises in the context here on the front end where it would allow a defendant to make a very broad claim in an initial 2255. And then to kind of respond to your point, Judge Smith, have it never end because they trickle out new argument after new argument after new argument to support that very broad claim. The statute doesn't provide for that. And the case law upon which Mr. Herman relies, it really illustrates that. It illustrates that congressional directive that everything should be raised and has to be raised on the front end. But that's not why this is dragged out, is it? It's because the status of the law has evolved during this process for some length of time. We've been in—so it's not just that they're parsing their arguments and delaying this for years and years. That's not what's been delaying this for years and years. The defense is responsible for the delay. The defense is responsible for the arguments that they raise. And one of the other aspects of 2255 is that there has to be specificity in the claim or argument or issue that's raised because that affects factual and legal determinations that have to be made. When something is raised, the court has to decide first, is this a type of claim that's cognizable under 2255? Is this something that has been procedurally defaulted? Is this something that is asserting a new rule that has been recognized by the Supreme Court which could overcome the statute of limitations? If Villareal had raised the claim that he's now saying that he raised, the court would have had to have gone through all of that analysis with respect to the mens rea claim. Because he didn't, it never did, which is one of the sure signs that the claim was not raised. At the time that Villareal filed his initial 2255, his conviction had been final for almost three years. As soon as that 2255 is filed, recognizing the context in which it arose, the district court immediately said, this has been filed. It looks like it is likely untimely unless Johnson, which is the case upon which Villareal is relying, recognize a new right that's applicable to his case. And the court started down that road, first giving him the opportunity to supplement, to make any appropriate arguments there, and then litigating and analyzing the case under that framework. The tact that Mr. Herman is suggesting here takes a backward-looking approach to say, okay, now that Borden has been decided, is there some place where some broad claim was raised that Borden might apply to? And that is just inconsistent with the entire statutory scheme of 2255 and the AEDPA, which is intended to encourage, well, number one, to drastically limit collateral attacks, but number two, to encourage any ground for a collateral attack to be brought in that initial motion. And that didn't happen here. This court has— I don't understand why the broad claim that would encompass it would not be satisfactory, because he wouldn't know it was a Borden claim. I mean, that's— No. No, but 2255 drastically limits the kinds of claims that can be brought, and the fact that he didn't bring it doesn't mean that he's now entitled to relief. Well, the question is, did he bring it or not in the broad statement of the claim that he made?  And our reading of the case law and our understanding is that he did not, that a defendant is not entitled to make a very broad claim, saying, for instance, my ACCA sentence was improper or unconstitutional, and then to add arguments that the government and the court has to deal with in series as they come up at any point in the proceeding. Do you want to address N. Ray Sharp? I believe N. Ray Sharp arises in the context of a claim that the defendant is seeking to raise or an argument the defendant is seeking to raise in a successive petition and is found to have been within the scope of the claim before. As I said, that context really matters. It is the purpose of that rule, requiring a defendant to have raised something in an initial petition, not allowing them to assert that as a second or successive petition, is entirely consistent with channeling everything into an initial petition. And instead, interpreting that to say a defendant can lodge a broad general claim and then add a new argument, and if the court finds that argument improper, add a separate argument that's never been raised before, and then keep doing that seriato is inconsistent with the structure and purpose of 2255 and the AEDPA and the limits on second and successive petitions. I also want to briefly address the suggestion that remand is appropriate here. If the court finds that Mr. Villarreal didn't raise a broad claim, then the proper result here is to affirm. It's not to remand. That would be tantamount to a second or successive petition, right? Correct, Your Honor. That's exactly right. There is one Second Circuit case which the defense has suggested here that this court should follow, WAB, which falls on the minority side of a circuit split about whether limits on second and successive petitions apply when proceedings are still ongoing, like an appeal on an initial 2255. The Second and the Third Circuit are on the minority side of that split. Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits are on the other side of that split, and they find that those limitations do apply. The second and successive limitations do apply whenever proceedings are still ongoing on an initial 2255. And this court has already found in Enri Rodriguez that Borden does not provide a basis for a second or successive collateral attack on a conviction. Just a little over a month ago, this court decided not to take a decline to decide the question on which that circuit split exists in Sandoval Mendoza v. Lumpkin, which only has a Westlaw site at the moment, 2023 Westlaw 5620791. This case would be a particularly poor vehicle for wading into that circuit split because the issue of whether a new Borden claim would be a second or successive petition while this appeal is going on isn't properly before this court because the defense has never sought to raise that in the way that litigants have raised it in the other cases. They haven't filed a motion to amend under Rule 60 or Rule 15 to add the Borden claim while this appeal was going on, and therefore the analysis that those courts have done to decide whether the second or successive limitations apply can't be done here because they haven't raised the claim in that way. This positive question here really comes down to whether Mr. Villarreal raised a Borden claim challenged to his ACCA qualification based on the mens rea of the Texas statute. He didn't in his 2255. The only time he did, the time he came close to it, was in an objection to a Borden recommendation. When he was counseled, he could have moved to amend. The court wasn't required to liberally construe his objection because he was counseled, because he had already been able to amend his claim to add a enumerated offenses claim about his burglary conviction, and because he was grossly, grossly untimely in raising that. The court decided the claims that were properly before it, which were a Johnson claim, which everyone recognized at the time was what Mr. Villarreal was raising. The court also addressed the Herald-based burglary claim that he was raising. It did not err in deciding the case based on the claims that Mr. Villarreal made. The appropriate result here is to affirm. The court doesn't have any other questions. We'll rest them up. Thank you, Mr. Smith. Mr. Herman for rebuttal. Thank you, Your Honor. The question is, what is a claim, and did we make a claim? We have cited to the court case law where this circuit and other circuits asked that exact question. That was what the Seventh Circuit asked in Branigan. What is a claim for purposes of 2255? The courts have struggled with how broad should that claim be. Branigan itself had a concurrence where there was a difference of opinion between the majority and the concurrence about how broadly the claim should be determined when it's in the sentencing guideline context. So, case law has dealt with this, and that's what Mr. Villarreal is asserting to the court. The case law says, this court's case law, other court's case law, a claim is defined by the underlying events, not the legal arguments asserted. The government just turns that on its head, but it cites not one case from any circuit that has ever said that. The government has. Again, what is your strongest Fifth Circuit case that's directly on point in answering that question? Yes, Your Honor. I believe it's in Ray Sharp because of its application of Branigan in this exact context with a Supreme Court case that came out justifying that defendant's position, although somewhat late. And it's not an extensive analysis, but it's where the court focused in on this exact point from Branigan. And the government has no case law to help this court structure what it should be in terms of deciding when a defendant has made a claim or not. Yes, most of this occurs in the relitigation bar context. That's absolutely true because that's where it really becomes one of the most important issues. But we did cite cases to the court that aren't in the relitigation bar area. First is the Fourth Circuit case of N. Ray George. That dealt exactly with objections to a report and recommendation in a suppression context where the question was, does the district court have to take into account the objections as new arguments because the issue has already been raised? The Fourth Circuit said yes. That's the same analysis that we have here. The Supreme Court case of Mayall v. Felix, which we also cited, that case deals not with the relitigation bar, but with the amendment procedure under Rule 15 applied in the habeas context. The Supreme Court said, yes, you can make new arguments as long as they relate to the same common core of facts. The Supreme Court specifically rejected the idea that the legal theory makes the argument. And it cited to an earlier case from the 1940s, I believe, called Tiller, where the Supreme Court had said the exact same thing. Now, opposing counsel, your friend on the other side, says that this would open the floodgates to a broad pleadings, broad briefing, and then just serial litigation for years. That's not true. If I had not, if Villarreal had not made an elements clause claim in that initial amended petition, I couldn't be making this argument to you now. If I had failed to amend the claim that should have been made, then there would be no argument here. But Villarreal himself made a properly constructed elements clause claim. It's the same sort of structure that this court applied in Vargas Soto. The Vargas Soto court didn't look to the very specific legal arguments. It looked to, is there a residual clause claim? Not to the name on the Supreme Court case that was associated with it. Not to the sub-arguments that justified it. But to whether there was a residual clause claim made at all. We will not have a second or successive petition here. One, because this court should grant relief now. But the government says that you shouldn't remand. If we wind up in that position, that is not an ideal position. We have been litigating this issue from the beginning. If the court looks at its own docket, almost as soon as Villarreal, as soon as Borden came out within a few months, and then within a few weeks, I believe, of when the court had another order before it, I moved to remand the case to the district court because I thought I could make this argument better in the district court and that I would obtain relief because it was so clear. I made this motion over a year ago now, several years ago. And the government opposed it because we didn't have a COA. That's why we've been waiting all this time. So it's not that we didn't ask for it. It's not that we didn't ask to amend our claim because under Mayo versus Felix, we could come back and amend the claim to assert the Borden argument. It would be clear. We're talking about the same common core of facts. The Supreme Court case law justified what I was asking for. So, yes, there is a circuit split about second or successive petitions. If this is the unfortunate situation we'd be in, having to go back to the district court now, I don't think we should be back there. I think this court should vacate this district court's order. But we're in a very special position that is very different from the others where a petition ended, litigated, had an appeals court decision, and stopped, and then somebody came back and asked for something new years later. That's not what happened here. We have been asking for this throughout. We've never stopped appealing. We've gone to the Supreme Court, back here, down to the district court, and back here again. Thank you, Your Honor. Thank you, Mr. Herman. Your case is under submission. Next case.